May it please the Court. Good morning. Good morning. My name is James McGarry. I'm a private attorney. I represent appellants, Investigator John Wilson and the Department of the California Highway Patrol. Notwithstanding appellees' attack of Investigator Wilson's alleged misstatements and claimed omissions, fueled by Mr. Honan's ever-changing story, good cause yet remained to proceed with the searches. As the Cameron case tells us, probable cause exists where a reasonable officer has occasion to believe that the search will uncover evidence relating to a suspected crime. The evidence in this case, which has been deduced, demonstrates that Investigator Wilson had information from Mr. Ayers that he had been assaulted, battered, and threatened. Mr. Wilson, or Investigator Wilson, also had information that a $2,900 computer had been rendered useless. Counsel, before you go on with that part of the argument, will you clarify something for me? In this case, of course, there are allegations of, if you will, judicial deception in connection with the issuance of the second search warrant. Given that we have to take certain allegations as true at this point, doesn't that eliminate the right to qualified immunity at this stage of the proceeding? Are you referring to the ruling by the Court of Appeal? I'm referring to the, yes, in this case, that's correct, yes. May I address that, Your Honor? Certainly, please. Yeah. The California Court of Appeal ruling with respect to the suppression of evidence is not dispositive as to whether the search warrants were valid. Rather, the ruling does not satisfy the requisite elements for collateral estoppel on due process or qualified immunity. And by that, I mean to say that the elements of identity of issues, finality, and privity are not met. First, with respect to the identity of issues, the suppression order is not identical to the issue of qualified immunity. The ruling did not result in finality. There was neither a conviction nor an acquittal. There was instead a dismissal. Counsel, with respect, perhaps I'm not stating my question well. What I'm wondering is, at this stage of the proceeding, is your officer, are your officers entitled to qualified immunity since there is so much dispute about what May I respond, Your Honor? Please. Yeah. Qualified immunity serves to protect Investigator Wilson. It's designed, as the case law demonstrates, to afford breathing room to make reasonable but mis- We hear these a lot, as you probably know, both in the Federal and State context. But we also know that if there is a material dispute of fact that go to the heart of what happened, sometimes you can't give qualified immunity. So my question to you is, don't we have that very situation here in connection with the issuance of the second search warrant? Well, what I'd say to you, Your Honor, is this. There's been, as I mentioned, an attack on Investigator Wilson's alleged misstatements and claimed omissions. And what they're fueled by is an ever-changing story by Mr. Hone. You mentioned that before. But my point is simply this. Your client may be absolutely right. I don't know. But at this stage of the proceeding, don't we have to assume that the allegation is true? And if so, doesn't that affect our analysis of whether qualified immunity is available at this point? Your Honor, I don't disagree with your analysis that you have to view things most favorably to the non-moving party. Right. And that's my point. I have no quarrel. I agree with that. Okay. There's no quarrel with that. That's, I think, well established in the law. And with regard to the second warrant, which is the search at the home, if you construe the facts as alleged in the light most favorable to the plaintiff, then that would render the warrant fatal, right? Well, not the plaintiff. I think that's what Judge Smith is getting at. Indeed. When you're assessing the materiality of those purported misstatements and omissions, they're material to the warrant. How can it be otherwise? Well, there are other ---- And the warrant, I mean the warrant for the home. I think the analysis may differ with regard to the first search warrant. Well, may I respond, Your Honor? What I believe was indicated during the second warrant application was that certain things were discovered, but there was a good reason to believe that other ammunition and weapons would also be found at the house. I don't think that was an unreasonable expectation. We didn't go there initially to find ammunition and weapons. We went there looking for evidence of a recording. And that's what we found in the possession of a person who was not permitted to possess weapons as a convicted felon. So that was unexpected. But that was part of the fruit of the first search. So that led us to the second warrant application. Can you discuss the issue we discussed in the other case with regard to inviting Mr. Ayers to be present at the search warrant? Well, he was invited. He was there to assist. He was there to assist us in connection with what we were searching for, which was I guess I don't understand your answer. He was there to assist you in getting the tape recording? He was? Well, that was the breadth of the search warrant, as Your Honors have noted. It didn't extend beyond that. I thought that he was there to finish the inspection of the records, the original purpose for which he visited the premises. Well, I can't speak to Mr. Ayers' intentions because the purpose for which Investigator Wilson obtained the search warrant was to find evidence of a recording. So I can't adopt or say why specifically why Mr. Ayers and his supervisor were in attendance or what their intentions were. Mr. Ayers and Mr. Sims both testified that they went there because the CHP officer asked them if they wanted to finish their investigation. That's what they testified to. Well, I believe there's a different interpretation of that by Investigator Wilson. Well, then where are we? I thought Wilson asked Ayers if they would like to use the opportunity while the officers are on the premises to search, to execute the warrant, to complete the tax inspection. That's what Wilson said. That's correct. He did. How is that in aid of the execution of the warrant? I don't believe that it is, Your Honor. I think the warrant is more narrowly prescribed, as you're aware. It pertained to the investigation of video recordings. But now you're confusing me because if he's inviting them there to do their investigation, then that's not what the warrant was for, as you just said. You're correct. Okay. So then he doesn't get qualified immunity for that? No. I disagree, Your Honor, respectfully. As I said, qualified immunity, as I noted in my reply brief, affords breathing room to make reasonable but mistaken judgment and protects all. But, counsel, with respect, I mean, you are reciting the platitudes of many cases, but we're dealing with the real world here. And the reality is you've got a greatly conflicted situation here where we can't give qualified immunity, can we, when you take the facts as alleged by the other side? No, I believe you can, Your Honor. How do we do that? Well, for the reasons I was beginning to enunciate, that it protects. But the breathing room? Well, the result of that is that it protects all but the plainly incompetent and those who knowingly violate the law. That doesn't help. No. All right. May I go on to another point? Beg your pardon? May I go on to another point? Of course. How much time do I have remaining? A minute and four seconds. May I reserve that? Sure. Thank you. Good morning, Your Honors. I bet you disagree with him. Well, I do. And for the tape, again, my name is Polly Estes representing Apple East. Let me begin with your questions that you talked about initially. First off, the California Court of Appeal found that both warrants were invalid, not just the second warrant. So I want to address that first warrant, since you seem to think that the analysis might differ between them. Officer Wilson knew that he had to allege that a felony had occurred because no warrant would issue simply for a misdemeanor. He made multiple false statements in both warrants, and he left out several pieces of relevant information. It's not just that. You'd have to also show that but for the omission or misrepresentation, no search warrant would have been issued. So the way you frame it, we don't end the analysis there. We'd have to say, let's say those statements are excised from the affidavit. Would there still be probable cause to go in and search for the videotape? So there's some additional facts, and correct me if I'm muddling them, but there are allegations in the affidavit suggesting that there's a posting at the business premises indicating that the business is under surveillance. So there was reason to believe that there would be a videotape found, even separate and apart from this disputed interaction or statements back and forth between your client and the officer. May I address that first, please? Okay. Two things. Number one, Honan states that he absolutely never told them that there would be a video or audio tape and points out the logical fallacy behind that reasoning because none of their surveillance equipment even contains audio. So right off the bat, why would he say something that he knows he could never prove? Well, set that aside. Okay. Setting that aside. On May 16th, when Officers Wilson and Bassetti came to and took a tour of Advance Building, they talked to him about what happened on May 7th. They talked to Honan. And it all happened inside the entryway, and they would have seen the entryway. They then took a tour of the entire facility, and they saw where the cameras were. The cameras are in a giant room that is completely separated by a wall and doors, you know, from the entryway. So the cameras that they ripped out of the walls and that they had seen on May 16th and knew were the surveillance equipment, they would also have known that there was no physical way for those cameras to have recorded what happened on May 7th. So you're saying the physical configuration was such that they would have known the camera was not pointed at the area where the altercation occurred? Correct. Just as I know that that camera is not recording what's happening in Judge Bea's office. What does the sign say? The sign, you know, I don't know, and so I wouldn't want to misstate. I'm sorry. I am not aware of that. It's not anywhere in the summary judgment record, I believe, and so I'm not sure where that comes from. I'd be happy to look it up, however, and get back to Your Honor with an answer to the question. Can I have you address or clarify the record with regard to a false arrest allegation or claim? What period of time are you talking about, the detention during the search? Yes. And if that's the case, why does the officer not get qualified immunity for that? He would not get qualified immunity because he knew of all the facts that he had misstated in the warrant and the relevant facts that he had left out, and I'd like to address those, if you might, and why. You're tethering it to the legitimacy of the warrant, so we find that the search warrant of the premises survives, then that would lead to the conclusion that he gets qualified immunity for the detention during the search? Am I understanding your position correctly? Yes, because I think exactly the same facts would support both analyses, although they're slightly different analyses. They would support both. First off, let me address the contention that you should be the court to engage in this analysis. The California Court of Appeal has already held that the search warrant is invalid, and we would argue that issue preclusion does apply. Counsel stated that the ruling was not final, but, in fact, it is under the rules of California procedure. That ruling, they actually, the Attorney General, sought a reconsideration of that ruling, and it was denied, and so that ruling is, in fact, final, the condition granting. And you'll note that on remand, the superior court dismissed the charges, so that adds to the finality of the decision. There is no, there are no proceedings ongoing anymore. But from our perspective, you want us to treat both the warrants as invalid per the State Court of Appeal, is that right? Yes, correct, Your Honor. They found that both of them are invalid, and I don't think that this court Because there was no probable cause established in the warrants, correct? That was the holding. Yes, that was the holding. Now What about the fact that the officers can rely on good faith under Leon? Yes. Does that change the analysis? It might have, if that A judge signed off on these warrants. That's true, and that is their main argument, is that, well, gosh, a magistrate judge signed off on the warrants, so it must be fine. However, the Supreme Court in, sorry, let me find my case, I think it's Malley v. Briggs, has already, has already completely discounted that same argument and held that just because a magistrate signs off, where you have a situation like we have here, where the officer has actually misrepresented facts to the magistrate and withheld relevant information from the magistrate, then that doctrine doesn't apply, and the officer is not entitled to rely upon the holding of the magistrate that a warrant should issue. So that's the key difference here. And secondly, what was I just saying? Oh, for Leon. So the question of good faith of the officers in Leon was already briefed twice to the California courts. Leon and its good faith exception that even if you find the warrant invalid, the evidence should not be suppressed, was first argued before the California Court of Appeal when we sought the conditional writ to have the evidence suppressed, and they did not find that the good faith exception applied, and they actually held that the evidence must be suppressed. Unless it was a conditional writ, right? So they said, Superior Court, unless you dismiss the charges, then we will hold that the evidence should have been dismissed. Does that decision bind us? Yes. Yes, I think it does. If you look at the analysis under Kendall v. Visa on how issue preclusion applies, I think it certainly does. And also the full faith and credit clause of the U.S. to the California Court of Appeals decision. Secondly, good faith was also fully briefed and argued when the attorney general sought its own petition for writ of mandate to overturn the California Court of Appeals decision, and that was the basis of their argument, and that petition was denied. So twice the California courts have already considered this very same argument and rejected it. Is anything, if you will, alive still in those cases? No, not a single thing. Every single ruling against or charge against Mr. Honan has been dismissed. So we would submit that as Judge Englund found, a multitude of issues do still preclude the granting of summary judgment. A couple of statements I want to make sure I clarify for you. They stated that Officer Wilson invited the BOE employees along to finish their ongoing sales tax investigation, but, in fact, if you look at the record, there was no ongoing sales tax investigation. The very first time any records that gave even a suspicion that sales tax was not being paid was during the actual search on May 30th. On May 7th, when heirs stopped by, the only thing he asked about was whether or not they had a business license. And he admits that he saw a valid business license posted next to the front door. He saw it twice, when he started on his way out, right, and then he stumbled, dropped his case, facts which you must take as true at this point in the proceedings, right, and then he came back in. He was so unafraid of Mr. Honan that he came back in. I see that I'm out of time. Thank you very much. Roberts. Thank you, Your Honor. Rebuttal time here. Thank you. State law immunity under Government Code Sections 821.6 and 815.2 are not limited to causes of action for malicious prosecution. The Sullivan case from 40 or 50 years ago was not the last word from the California Supreme Court. As counsel has already indicated, the Asghari decision, which cites two appellate decisions that pertain to investigations and the same types of causes of action as are present in this case, is the law of the land. Well, wait a minute. I thought, well, you've probably heard our discussion before. Isn't Gannon binding on us, our own decision? Isn't that binding on us? Asghari is binding on you. It's the California Supreme Court. So you say that overrules Gannon? No, what I'm saying is it's consistent with a number of appellate decisions, intermediate court of appeal decisions over the past 20 years. Okay. My final point, if I might, Your Honor, is this. I'm sorry. We've got your time, and we're going to finish, okay? All right. Thank you. Thank you. The case that's argued is submitted.
judges: M. Smith, Nguyen, Restani